UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAN JUAN PRODUCTS, INC. and
AMERICAN ENVIRONMENTAL
CONTAINER CORP.,

      Plaintiffs,

v.                                                    Case No. 8:21-cv-2469-TPB-JSS

RIVER POOLS & SPAS, INC., et al.,

      Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on "Defendant Thursday Pools LLC's Motion for Summary Judgment (Docs. 170; 179; 243), filed on January 3, 2023, and "Defendant River Pools & Spas, Inc.'s Motion for Summary Judgment" (Doc. 200), filed on January 11, 2023.  Defendant River Pools Franchising, LLC joined in both motions.  (Doc. 204).  Responses and replies were filed.  (Docs. 206; 221; 227; 239; 254).  Upon review of the motions, responses, replies, court file, and the record, the Court finds as follows:

## Background

Plaintiff San Juan Products, Inc. markets and distributes fiberglass swimming pools and spas that are manufactured by Plaintiff American Environmental Container Corp.  These two corporate entities are controlled by Kirk Sullivan.  Defendants River Pools & Spas, Inc. and River Pools Franchising, LLC directly compete with San Juan in the fiberglass pool and spa industry, and they

distribute products manufactured by Defendant Thursday Pools. Four individuals –
Bill Khamis, Ed Vondell, Jason Hughes, and Marcus Sheridan – have previously or
currently control some, or all, of the three corporate entities. The exact role and
involvement of each of these individuals in the three corporate entities named as
Defendants in this case is unclear.

In any event, this dispute arises from the publication of two articles allegedly
authored and distributed by Defendants. The publications are titled "A Complete
Review of San Juan Pools: Models, Shapes, Colors, Costs, and More" and "San Juan
Pools v. River Pools: Which Fiberglass Pool Manufacturer is Best for You." Both
articles appeared on an internet website with the address of
https://www.riverppoolsandspas.com. The articles, which are relatively short and
conversational in tone, include between 10 and 12 pages of text regularly broken up
by various large pictures. It is undisputed that these two articles appeared on a
business website or blog controlled by at least one of Defendants for 23 and 26 days
respectively in October 2021, and they were taken down after Plaintiffs filed suit.
In addition to appearing on Defendants' website, Plaintiffs allege the articles were
disseminated by various means to customers and pool distributors, but the scope
and extent of this additional distribution is disputed.

Plaintiffs generally allege these publications were part of a "campaign of
dirty tricks" and a concerted effort by Defendants to gain an improper competitive
advantage over Plaintiffs and others in the fiberglass pool and spa industry.
Plaintiffs argue that although the publications may appear unbiased and neutral at

first glance, each publication is "overwhelmingly negative" in tone and substance, as Defendants present their competitors in "the worst possible light."  Plaintiffs further assert that the publications use Plaintiffs' trademarks in unauthorized ways to mislead and deceive potential customers.

On October 21, 2021, Plaintiffs filed a complaint against three corporate entities and numerous individual defendants, asserting various federal and state claims.  (Doc. 1).  The individual defendants were later dismissed from the case, and a new corporate defendant was added.  Due to issues associated with identifying the proper defendants, Plaintiffs were later granted leave to file an amended complaint, which was filed on January 6, 2023.  (Doc. 182).  In the second amended complaint, Plaintiffs assert the following eight claims: Defamation (Count 1), Defamation Per Se (Count 2), Trade Libel (Count 3), Disparagement of Property (Count 4), Tortious Interference with Prospective Economic Advantage (Count 5), Trademark Infringement (Count 6), Federal False Advertisement and Unfair Competition (Count 7), and Florida Misleading Advertising (Count 8).  (Doc. 219).  The second amended complaint did not substantially diverge from the earlier complaint, so the pending defense motions for summary judgment remain ripe for review.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Individual Party Responsibility*

According to Defendants, none of them has any possible legal responsibility for anything alleged in Plaintiffs' second amended complaint, even if the Plaintiffs' allegations are proven true.  To be clear, Defendants essentially make three distinct arguments:  (1) Plaintiffs' allegations are not factually supported; (2) even if Plaintiffs' allegations were proven, the law does not provide a basis for recovery; and (3) even if the facts and the law support recovery, no named Defendant has any legal responsibility for anything that might be proven to have occurred.

During at least two of the pretrial hearings in this case, the Court specifically asked counsel for Defendants to clarify which Defendant bears responsibility should

Plaintiffs' allegations be proven, but Defendants were unable, or unwilling, to do so. As such, fact issues remain as to which, if any, of Defendants bears legal responsibility should Plaintiffs' allegations be proven. All Defendants will proceed to trial on all claims, with the exception of those claims eliminated through summary judgment as indicated below. Similarly, any argument made by any Defendant that summary judgment should be granted in its favor to eliminate one of the two plaintiff entities from this case is denied.[1]

### *Pre-Suit Notice*

Defendants repeatedly argue that judgment should be granted in their favor due to Plaintiffs' failure to comply with the pre-suit notice requirements contained in § 770.01, *F.S.* In support of this argument, they even cite a case they contend is "shockingly on point."[2] Defendants' argument is not well-taken and, frankly, under the facts presented here, borders on frivolous. In *Mazur v. Ospina-Baraya*, 275 So. 3d 812, 815 (Fla. 2d DCA 2019), the court clearly held that "Florida courts have consistently interpreted section 770.01 to apply only to news media, i.e., the press." As such, the pre-suit requirement provided in § 770.01, *F.S.* applies only to "media defendants." *See Comins v. Vanvoorhis*, 135 So. 3d 545, 549 (Fla. 5th DCA 2014).

---

[1] The jury will no doubt quickly learn that this case is essentially a dispute between Kirk Sullivan on one hand, and Bill Khamis, Ed Vondell, Jason Hughes, and Marcus Sheridan on the other. In light of this reality, the Court has repeatedly urged the parties to simplify things and avoid burdening the jury with a case including eight causes of action, brought by two separate corporate plaintiffs, against three separate corporate defendants, with all of the resulting, *and unnecessary*, confusion, complexity, documents, witness testimony and time.

[2] *See* "Defendant, River Pools & Spas, Inc. Reply To Plaintiffs' Opposition To Defendant's Motion For Summary Judgment." (Doc. 254 at p. 2).

The phrase "media defendants" is intended to distinguish "parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged." *Americare Healthscan, Inc.*, 763 So. 2d 1173, 1175 (Fla. 4th DCA 2000). The fact that § 770.01, *F.S.* only applies to media defendants is well-settled in Florida law. *Ross v. Gore*, 48 So. 2d 412 (Fla. 1950*); Mancini v. Personalized Air Conditioning & Heating, Inc.*, 702 So. 2d 1376 (Fla. 4th DCA 1997).

Some Florida courts have recognized a narrow exception for so-called "blogs," which are a modern functional equivalent of traditional news media. These kinds of blogs – ones that are engaged in the dissemination of news and information – may qualify as "media defendants." Contrary to Defendants' arguments, that exception is not even remotely applicable here.

In *Comins*, a case cited by Defendants, the court held that a blog run by a University of Florida doctoral candidate in sociology, titled "Public Intellectual," which was founded to "publicly comment on issues of public concern in an intellectual manner," was within the scope of § 770.21, *F.S.* As the court explained, the notice requirement in § 770.21, *F.S.* was applicable because the blog "operated to further the free dissemination of information or disinterested and neutral commentary or editorializing as to matters of public interest." *Id.* at 557.

Here, the blog in question was allegedly set up by one or more Defendants, all of which were for-profit businesses, to post information on the internet about direct competitors in the hopes of increasing Defendants' sales. It was a sales and

marketing blog – nothing more and nothing less.  Defendants' argument that their blog was similar to the "Public Intellectual" blog run by the University of Florida graduate student in *Comins* is wholly lacking in merit.  In fact, it is not even remotely similar.  Unlike the blog in *Comins*, Defendants' blog was clearly not "operated to further the free dissemination of information or disinterested and neutral commentary or editorializing as to matters of public interest."  Rather, Defendants' blog was operated by them as a business venture solely to help their pool businesses make more money.  To suggest that Defendants' blog was in any way commenting or editorializing as to matters of general public interest is ridiculous.

Defendants also cite *Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302 (S.D. Fla. 2008), *Sirer v. Aksoy*, No. 21-cv-22280-BLOOM-Otazo-Reyes, 2021 WL 4952610 (S.D. Fla. Oct. 25, 2021), and *Buckley v. Moore*, No. 20-CIV-61023-RAR, 2021 WL 3173185 (S.D. Fla. July 26, 2021).  Those cases are distinguishable on their facts.  Importantly, none of those cases involved the scenario presented here – a blog published by a direct business competitor as part of its marketing strategy.  Under the facts presented here, § 770.21, *F.S.* is not applicable, and all arguments based on this statute in support of summary judgment are rejected.

### Defamation

Plaintiffs have brought four separate claims for defamation: Defamation (Count 1), Defamation Per Se (Count 2), Trade Libel (Count 3), and Disparagement of Property (Count 4).

> The law of slander and defamation is so ancient it contains numerous illogical twists and refinements stemming from ecclesiastical law, as well as the common law.  Currently it is overlaid with statutory and constitutional requirements and limitations.  It is confusing, unclear illogical, and somewhat in conflict.  Courts and judges frequently disagree with one another as to whether an actionable defamation has been established, as a matter of law.

*Scobie v. Taylor*, No. 13-60457-Civ, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013) (quoting *Scott v. Busch*, 907 So. 2d 662, 667 (Fla. 4th DCA 2005)).  Moreover, due to the never-ending uncertainties associated with the law in this area, the Florida Standard Jury Instructions on defamation were withdrawn in November 2021, and new standard instructions have not been published.[3]

At least this much is certain: "Defamation under Florida law has five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory."  *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).  "A statement is defamatory if it 'tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation.'"  *Sloan v. Shatner*, No. 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *4 (M.D. Fla. June 22, 2018) (quoting *Rapp*, 997 So. 2d at 1109).

---

[3] *See* Florida Civil Jury Instructions, Section 405, Defamation, available at https://www.floridabar.org/rules/florida-standard-jury-instructions/civil-jury-instructions/civil-instructions/#405 (last accessed February 14, 2023).

In defamation actions, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected . . . by the First Amendment." *Id.* (citations omitted).  Whether a statement constitutes fact or opinion, and whether a statement of fact is susceptible to defamatory interpretation, are questions of law to be determined by the court.  *Id.*  When evaluating the statements, the court should consider the statements in their totality.  *Id.* (citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 715 (11th Cir. 1985)).

"[A] false statement about another is a required element of defamation." *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) (citing *Cape Publ'n, Inc. v. Reakes*, 840 So. 2d 277, 279-80 (Fla. 5th DCA 2003)).  "According to the U.S. Supreme Court and Florida case law, falsity only exist if the publication is substantially and materially false, not just if it is technically false."  *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999).  "Under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true."  *Id.* at 706 (citations omitted).  When determining whether a statement is substantially true, the court must read the statement in the full context of its publication.  *Kieffer*, 269 So. 3d at 659.  "Where a communication is ambiguous and reasonably susceptible of a defamatory meaning, it is for the trier of fact to determine whether the communication was understood in the defamatory sense."  *Id.* (quoting *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985)).

With these guiding principles in mind, the Court turns to evaluating the five

statements identified in the second amended complaint.

Statement 1: San Juan's Pools Look "Weird"

Plaintiffs identify two statements that they contend are defamatory, either

alone or taken together, because a reasonable reader would believe that Plaintiffs'

pools are "weird" and may hurt the resale value of a home.

> "San Juan's biggest differentiator is the sheer number
> (and distinctive nature) of its 'weird' pools, which can't be
> properly classified as aa rectangular or traditional pool.
> We're counting Roman end pools as 'rectangular' so when
> we say 'weird,' we're talking about models like the iPool,
> which has a sharp 45-degree angle on one side that gives
> it a geometry-class look. These unusual pool shapes
> might be perfect of your aesthetic sense, but they may
> make it somewhat harder to sell your home in the future
> if most potential buyers don't share the same sense of
> novelty."

> "As we previously covered in our San Juan Pools deep
> dive article, this is a manufacturer with a wide range of
> fiberglass spool sizes and shapes -- more than any other
> major manufacturer we've come across. We counted at
> least 75 different fiberglass pool models on San Juan's
> website, from a cocktail-pool-sized mini model to a hefty
> 40-foot-long shell with a roughly eight-foot deep end. In
> between these extremes, San Juan also offers a large
> amount of 'unique' pool shapes which you'd typically only
> get from a concrete pool build…. River Pools has a smaller
> range of unique pool models. We focus our efforts on full-
> size rectangular and freeform pools that are broadly
> appealing and easy to enjoy for families and parties of all
> sizes…."

Considering the overall context and tone of the statements and articles, the

Court finds that these statements are not actionable as defamation. These

statements constitute Defendant's subjective assessment of the pool shapes and how

that may impact the potential resell value of a home. Perhaps most importantly,

the statements are not readily capable of being proven true or false.  *See Turner*, 879 F.3d at 1264 (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 697 (11th Cir. 2016)).  In addition, the statements notably contain several cautionary statements that inform a reasonable reader the conclusions are simply opinions.  *See id*. (citing *Keller*, 778 F.2d at 717).  The motions for summary judgment are granted as to this ground.

<u>Statement 2: San Juan Provides No "Comprehensive" Installation Guide</u>

Plaintiffs identify three statements that they contend are defamatory, either alone or taken together, because a reasonable reader would believe that Plaintiffs do not "provide any instructions" for pool installation for review, and because of this, Plaintiffs' pool and spa products are more likely to be improperly installed and experience problems.

> "San Juan's installation process is covered briefly in a series of YouTube videos posted on its site, but there's no comprehensive guide to the installation process you could review as a potential pool buyer."

> "The most unique pool model in the world won't make you happy if it breaks and causes headaches because your local installer didn't put it in the ground properly."

> "San Juan Pools boasts a larger network of dealers and installers than any other fiberglass pool manufacturer we've researched. However, what we haven't been able to find is any single, comprehensive overview of San Juan's installation policies and processes, so we can't share much information on the company's installation methods."

Upon review, the Court finds that these statements are not actionable as defamation because they are substantially true.  In a deposition, Kirk Sullivan, the

owner of San Juan, himself admitted that the installation guide did not cover all the details of installation.   At worst, the statements constitute Defendants' subjective opinion of the comprehensiveness of the installation guide.  The motions for summary judgment are granted as to this ground.

Statement 3: San Juan Does Not Honor Warranties

Plaintiffs identify two statements that they contend are defamatory, either alone or taken together, because a reasonable reader would believe that Plaintiffs do not honor their warranties.

> If you buy a house with a San Juan pool already installed, you won't be able to claim the warranty if the pool shell breaks, even if it was only installed a year ago.
>
> This is one of the longer warranty periods available for fiberglass pools, but it also has one critical restriction – since the warranty is non-transferable, you may not be able to claim warranty coverage if you buy a home with a San Juan pool already installed.

Specifically, Plaintiffs argue these statements would cause a reasonable reader to conclude that (1) Plaintiffs will deny a warranty claim that would otherwise be within the warranty period if the claim is made by a subsequent purchaser of a home and not the original purchaser of the pool, and (2) Plaintiffs have in fact denied a warranty claim based on the claimant being a subsequent purchaser.

It must be noted that the warranty, on its face, states that it is non-transferrable.  Thus, even if Plaintiffs contend, *upon their own information and belief*, that they have never denied a claim on this basis, the statements are nonetheless non-actionable since they are substantially true and based on the

verbiage of the warranty itself.  The motions for summary judgment are granted as to this ground.

  Statement 4: San Juan's Price Estimates are Unrealistic, and Obtaining
  Reasonable Estimates Requires Some Time

  Plaintiffs identify one statement that they contend is defamatory because a reasonable reader would believe that "Plaintiffs are not transparent with their prices, and engage in fraudulent 'bait and switch' sales tactics . . ."

> San Juan … doesn't provide up to date prices in an easily accessible format on its site.  The best estimate we found, for  a range of $25,000 to $45,000, is quite frankly not realistic for any but the smallest models in San Juan's catalog, especially not in 2021 when most installers (under any brand) have months-long backlogs and struggle to find enough parts and materials to manage their existing order volume.  You'll most likely have to spend some time talking to a San Juan sales rep or local dealer to get a reasonable estimate on your pool project.

Plaintiffs allege that pages of their catalog are dedicated to price estimation, which includes a detailed and explicit description of different costs beyond the fiberglass pool shell, and that the intended implication of Defendants' statement is to convey that Plaintiffs will initially provide prospective customers with knowingly inaccurate price estimates to cause them to invest time and energy into their pool project only to discover later that the price quotes are far lower than the actual price, insinuating false advertising and unfair business practices.

  This statement concerning San Juan's pricing does not appear to be pure opinion, and Plaintiffs contend and point to record evidence to show that this statement is false.  Because there is at least one plausible defamatory

interpretation (that San Juan provides inaccurate price estimates), a jury must determine whether the communication was defamatory. *See Kieffer*, 269 So. 3d at 659.

Viewing the evidence in light most favorable to Plaintiffs, a reasonable jury could find that the statements are not substantially true but instead substantially false. That being said, the Court notes that the statements themselves – here, concerning opaque pricing – appear to be fairly innocuous, as do the other statements at issue in this case. In addition, the articles were online available on Defendants' websites for a relatively short period of time – less than one month – and were ultimately removed.

Ultimately, a jury might view these statements and find that they are not truly defamatory. But because the statements here are subject to a possibly defamatory interpretation, the Court leaves this issue for the jury's determination. The motions for summary judgment are denied as to this ground.

<u>Statement 5: San Juan Does Not Offer Any Pools Over 40 Feet in Length</u>

Plaintiffs identify two statements that they contend are defamatory when taken alone or together because a reasonable reader would conclude that Plaintiffs are "not capable of manufacturing, and do not offer for sale, pool products over 40 feet in length."

> San Juan's largest standalone model: 16' x 40' (Pacific)…
>
> San Juan offers… 12 models between 35 and 40 feet long… The two pools mentioned earlier – the Sedona and the Pacific – are San Juan's smallest and largest rectangular pool, respectively. Its largest freeform pool is

> the Oasis, a 16-by-40 foot model with a hefty deep end
> that gives it a total volume of nearly 18,000 gallons.
>
> San Juan's largest standalone FG model pool: 16' x 40'
> (Pacific)… Largest standalone model: 16' x 40' (Pacific….
> To a hefty 40-foot-long shell with a roughly eight-foot
> deep end….

These statements concerning the length of pools offered by San Juan do not appear to be subjective opinion.  Rather, they are presented and appear to be statements of objective fact.  Plaintiffs contend and point to record evidence showing that these statements are demonstrably false, and Defendants themselves even concede the falsity of the statements.  Because there is at least one plausible defamatory interpretation (that San Juan is not capable of constructing pools larger than 40 feet in length), a jury must determine whether the communication was defamatory.  *See id*.  Viewing the evidence in light most favorable to Plaintiffs, a reasonable jury could find that the statements are not substantially true but instead substantially false.  Because the statements are subject to a possibly defamatory interpretation, the motions for summary judgment are denied as to this ground.

<u>Public Figure or Limited Public Figure</u>

Defendants argue that Plaintiffs cannot establish the third element of the defamation claims – that Defendants acted with knowledge or reckless disregard as to the falsity on a matter concerning a public figure, or at least negligently on a matter concerning a private person.  Defendants contend that Plaintiffs are either public figures or limited public figures, so they must prove actual malice by clear

and convincing evidence.

"Public figure status 'is a question of law to be determined by the court.'" *Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1309 (M.D. Fla. 2021), *aff'd*, No. 21-12030, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) (citing *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002)). "Two fundamental criteria help draw the line between public and private figures: (1) public figures usually have greater access to the media which gives them a more realistic opportunity to counteract false statements than private individuals normally enjoy; and, more importantly, (2) public figures typically voluntarily expose themselves to increased risk of injury from defamatory falsehoods." *Maletta v. Woodle*, No. 2:20-cv-1004-JES-MRM, 2022 WL 2818108, at *3 (M.D. Fla. July 19, 2022) (quotation omitted).

The Court finds that Plaintiffs do not qualify as public figures but considers whether they may qualify as limited public figures. When analyzing whether an individual or entity is a limited public figure, or a private plaintiff, the court must first determine whether there is a public controversy – that is, "whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Mile Marker*, 811 So. 2d at 845. "After defining a public controversy, the court must then determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Id.* at 846 (citations omitted).

Based on the record, the Court finds that there is disputed evidence as to

whether Plaintiffs are limited public figures.  Certainly, Plaintiffs have thrust themselves into some public role by virtue of being global market leaders in the pool industry.  However, the Court is not persuaded that the undisputed evidence shows that the blogs arise from a public controversy or Plaintiffs' involvement therein.  *See Arnold v. Taco Properties, Inc.*, 427 So. 2d 216, 218 (Fla. 1st DCA 1983) ("Under the limited public figure concept, only statements relating to the controversy giving rise to the public figure status receive the protection of the actual malice standard."). The motions for summary judgment are denied on this ground.

**Defamation Per Se**

Plaintiffs claim that the five statements discussed above, either individually or taken as a whole, constitute defamation *per se*.  "A statement is 'actionable *per se*, if, when considered alone without innuendo, it: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) tends to injure one in his trade or profession.'"  *Shatner*, 2018 WL 3769968, at *6 (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)).  In addition, "the statement must be false."  *Id.* (citing *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 728 (Fla. 4th DCA 2010)).  Slander or libel *per se* statements do not require any additional explanation or context to establish the defamatory nature of the statement.  *Scobie*, 2013 WL 3776270, at *2-3.  Instead, "consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it.'"  *Id.* (quoting *Ortega Trujillo*

*v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998)).

Here, Plaintiffs argue that the statements have injured them in their trade or profession.  To injure one in his trade or profession, the statement must, without innuendo, strike at "professional competence and fitness to engage in a given profession." *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1346 (M.D. Fla. 2003); *see also Scobie*, 2013 WL 3776270, at *2-3; *Murray v. Pronto Installations, Inc.*, No. 8:20-cv-824-T-24AEP, 2020 WL 6728812, at *6 (M.D. Fla. Nov. 16, 2020).  The false statement must do more than merely harm the person or entity in its trade or business – the statements must impute fraud, want of integrity, or actual misconduct.  *See* 19 Fla. Jur 2d Defamation and Privacy §§ 34-38; Am. Jur. 2d, Libel and Slander § 205; *Continental Nut Co. v. Robert L. Berner Co.*, 345 F.2d 395, 397-98 (7th Cir. 1965) ("To allow a corporate corporation to recover on [libel *per se*], there must be a showing that it has been accused of fraud, mismanagement, or financial instability.").  Some examples of statements that have constituted defamation *per se* include explicit statements accusing a person or entity of committing specific crimes punishable by law, such as insurance fraud, *see StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1351 (N.D. Ga. Sept. 26, 2018), or statements that a hospital performed and charged for unnecessary tests and medications and made profits by leaving patients in intensive care for a longer period of time whenever possible, *see Florida Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 459 (Fla. 4th DCA 1990).

Considering the statements at issue here as the "common mind" would,

without innuendo, and in the context presented, none of the statements identified rises to the level of defamation *per se*.  Nor do all of the statements taken together in context constitute defamation *per se*.  The statements do not charge fraud or misconduct, striking at Plaintiffs' competence in the trade or profession.  More importantly, although the statements might, under some set of facts, conceivably cause injury to Plaintiffs' businesses, the statements are not injurious in and of themselves without innuendo.  The motions for summary judgment are granted as to this ground.

**Florida's Single Action Rule –**
**Tortious Interference with Prospective Economic Advantage, Defamation,**
**Trade Libel, and Disparagement of Property**

Generally, a plaintiff is the master of its complaint and is entitled to select the claims and legal theories of recovery it prefers.  *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) (quoting *United States v. Jones*, 125 F.3d 1418, 1428 (11th Cir. 1997)).  Florida courts generally permit cases to proceed to trial on alternative theories of liability.  *See, e.g.*, *Haynes v. Blackshear*, 311 So. 3d 163, 171 (Fla. 2d DCA 2020); *Baione v. Owens–Illinois, Inc.,* 599 So. 2d 1377, 1378 (Fla. 2d DCA 1992).  But in actions involving defamation, Florida courts employ what is known as the single publication or single action rule.

"The single publication/single action rule ... does not permit multiple actions when they arise from the same publication upon which a failed defamation claim is based."  *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002).  In this context, "[w]hen claims are based on analogous

underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014), *aff'd*, No. 14-13855 (11th Cir. Feb. 17, 2015). "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Callaway Land & Cattle Co.*, 831 So. 2d at 208 (quotation omitted).

Based on this rule, Florida courts regularly preclude tortious interference claims that factually overlap defamation claims.  For example, in *Tobinick v. Novella*, No. 9:14-cv-80781, 2015 WL 328236 (S.D. Fla Jan. 23, 2015), which involved facts similar to this case, the plaintiffs asserted claims based on the defendant's publication of two articles on an internet website and filed a complaint alleging five separate counts: violations of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under 28 U.S.C. § 1338(b),trade libel, libel *per se*, and tortious interference.  The *Tobinick* court found that the plaintiffs' tortious interference claim involved the same allegedly false and/or defamatory statements made in the two articles published by the defendant.  Therefore, the tortious interference claim was dismissed based on the single action rule.

Similarly, in *Hill v. Allianz Life Ins. Co. of N. Am.*, No: 6:14-cv-950-Orl-41KRS, 2016 WL 872936 (M.D. Fla. 2016), the court found that "Plaintiff's tortious interference claim is based on the same publication and underlying facts as his

failed defamation claim. Plaintiff not only relies on the same conduct and alleged publication to support his claim, but his tortious interference claim explicitly incorporates the factual allegations of his defamation claim." As such, summary judgment was granted in the defendant's favor on a tortious interference claim based on the single publication/single action rule.

However, it should be noted that tortious interference claims are not precluded by the single publication/single action rule where they include conduct that is factually different from the defamation claim. *Geller v. Von Hagens*, No. 8:10-cv-1688-EAK-AEP, 2011 WL 2434217, at \*4 (M.D. Fla. June 13, 2011) (denying summary judgment on a tortious interference claim where the plaintiff's claim was based on conduct separate from the defamation claim); *Kamau v. Slate*, No. 4:11CV522–RH/CAS, 2012 WL 5390001, at \*7 (N.D. Fla. Oct.1, 2012), *report and recommendation adopted*, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012) (tortious interference claim dismissed based on single publication/single action rule, but plaintiffs given leave to file amended complaint with tortious interference claim asserting conduct separate from defamation claim).

Here, the tortious interference claim does not include conduct factually different from the defamation claims. Rather, in paragraph 86 of their second amended complaint (Doc. 219), Plaintiffs specifically incorporate by reference all of their defamation claims into their tortious interference claim. Paragraph 88 of Plaintiffs' second amended complaint alleges:

> All of the herein described facts and circumstances demonstrate that
> Plaintiffs had a preexisting business relationship between themselves and

dealers and installers of Plaintiffs' products, that Defendants had knowledge of Plaintiffs' relationship with its dealers and installers (See Exhibit A at 5 ("San Juan claims 'the largest network of fiberglass pool dealers in the country,' which seems to be true based on our research")), that Defendants' intentional and unjustified interference with that relationship <u>via the publication of the Defamatory Publication</u> caused dealers and installers to become concerned about the sustained marketability of Plaintiffs' products to prospective final owners and end users of fiberglass pool and spa products, and to indicate to Plaintiffs that the confusion in the marketplace among prospective final owners and end users of fiberglass pool and spas products <u>has resulted from the defamatory publications</u>. Consequently, <u>the publication of the defamatory publications</u> has resulted in a breach of the trusting relationship dealers and installers have in Plaintiffs, with dealers and installers questioning whether they should continue to endorse the quality of Plaintiffs' products and business reputation to customers, and to continue to purchase or distribute Plaintiffs' products. Thus, <u>in view of the existence of the defamatory statements,</u> Plaintiffs has suffered damage as a result of this breach of its relationships with its dealers and installers. (emphasis added).

Plaintiffs' tortious interference claim, like the claim in *Hill,* is based on the same publication and underlying facts as the defamation claim.  Similar to *Hill*, where the plaintiff suffered an adverse finding on summary judgment, Plaintiffs here rely on the same conduct and alleged publication to support their tortious interference claim, and that claim explicitly incorporates the factual allegations of the defamation claim.  Summary judgment must be granted here on Plaintiffs' tortious interference claim pursuant to the single publication/single action rule.

In addition to barring Plaintiffs' tortious interference claim, the single publication/single action rule also limits Plaintiffs to proceeding on just one of their three remaining defamation legal theories.  *Buckley*, 2021 WL 3173185, at *7-8. *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 (S.D. Fla. 2020) (dismissing plaintiff's claim for commercial disparagement because it stemmed from the same article as his defamation claim).  As the master of their

complaint, Plaintiffs are entitled to elect which of the three remaining defamation legal theories on which they will proceed to trial, but they may not proceed to trial on all three such claims.[4]

### Trademark Infringement

Defendants argue that summary judgment should be granted on Plaintiffs' trademark infringement claims because the record evidence does not show that the use of San Juan's trademark in the blogs confused customers.  Although Defendants argue that use of the San Juan trademark was appropriate for comparative advertising purposes and no possible confusion existed, it is not quite that simple. The Eleventh Circuit has explained that a competitor's use of a manufacturer's trademarks within its own website may be a violation of the Lanham Act, depending upon the factual circumstances.  *See North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218-24 (11th Cir. 2008).

In the second amended complaint, Plaintiffs assert that Defendants used embedded hyperlinks in the blogs that appeared as if they would direct customers to the San Juan website but instead directed customers to different pages on the River Pools website.  Alex Planes, the author of the articles, testified that one of the goals of the articles was to cause people searching for San Juan to instead be directed to a River Pools website, including through the use of hyperlinks of the

---

[4] As previously noted, Plaintiffs' defamation *per se* claims have been eliminated from this case by summary judgment.  It is not clear what the difference is, if any, between the three remaining defamation claims.  All appear to have the same elements and the same available damages.  Thus, as a practical matter, it does not appear to matter which of the three remaining defamation claims Plaintiffs choose to proceed to trial on.

"San Juan" name.  Mr. Planes also testified that the goal of using hyperlinks when referring to San Juan was for search engine optimization and to improve ranking of the articles.

There appear to be at least two different avenues of confusion at play.  Source confusion exists where a consumer is confused about whose site he has reached or somehow thinks that the plaintiff sponsors the defendant's website.  *See, e.g.*, *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1221 (11th Cir. 2008).  Initial interest confusion exists when the competitor uses the trademark to divert people looking for the plaintiff's website, thereby improperly benefitting from the good will that the plaintiff has developed in its mark.  *See id.*  In any event, there appears to be a genuine issue of fact concerning the likelihood of confusion that precludes summary judgment.  The motion is denied as to this ground.

### Florida Misleading Advertising
### § 817.41, F.S.

Defendants' only argument for summary judgment on this claim is based on Florida's single action rule.  However, summary judgment is unavailable here based on the single action rule because this claim, unlike the tortious interference claim, includes factual allegations that go well beyond simply recasting the defamation claims as a violation of § 817.41, *F.S.*  *See* Second Amended Complaint, ¶ 117 (Doc. 219).  Summary judgment is denied as to this claim.

### Damages

Defendants argue they are entitled to summary judgment on all counts, except for defamation *per se,* based upon an alleged lack of evidence of damages

arising from the publication of the articles.  Plaintiffs have pointed to record evidence to show damage, notably in the form of reputational harm.  The weight of this evidence will be evaluated by a jury.  The motion for summary judgment is denied as to this ground.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)      The motions for summary judgment (Docs. 170; 200) are **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 14th day of February, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**